# EXHIBIT 23

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE:  AD HOC GROUP OF QVC,     )
GROUP COMMON AND PREFERRED       )
EQUITY HOLDERS                   )
                                 )
        DEFENDANT.               )
_____ )
                                 )
CASE NO. 4:26-BK-90447           )
                                 )
                                 )

**TRANSCRIPT OF AUDIO RECORDED HEARING**

**BEFORE THE HONORABLE ALFREDO PEREZ**

**UNITED STATES BANKRUPTCY JUDGE**

**JUNE 4, 2026**

Reported    in Stenotype    by :
Cody   R.   Knacke   ,  RPR ,  CSR   No .  13691

HEARING JUNE 4, 2026

And the word TopCo, I just want to be clear for the record, TopCo refers now to QVCG; correct?

A.    That's correct.

Q.    Okay.  And then before QVCG existed or had a different name it was Qurate Retail, Inc. was TopCo?

A.    That's correct.

Q.    Thank you.

Now, isn't it the case -- this wasn't the case of Liberty Media or QVC Group dictating to QVC, Inc. what it would owe under this tax-sharing agreement without independent review by QVC, Inc. representatives, including yourself?

A.    That's -- that's correct.  We prepared it and they approved it.

Q.    And during the time frame you've undertaken this work, isn't it the case that you can't recall any significant discrepancies in the calculation of tax between QVC, Inc. on the one hand and the TopCo representatives that you worked with on the other hand?

HEARING JUNE 4, 2026

A.    I would agree with that.

Q.    And in fact, you are the ultimate authority on behalf of QVC, Inc. for those calculations, are you not?

A.    Yes, sir.

Q.    Okay.  Now, you believe that all payments over the last several years made by QVC, Inc. were made in accordance with the tax-sharing agreement; right?

A.    I agree with that.

Q.    They complied in all material respects; right?

A.    Yes, sir.

Q.    Okay.  Now -- and you were involved in all those calculations from at least 2020 through 2025; right?

A.    I would say 2016 through '25.

Q.    Even longer.  Thank you.

And then you would submit your work papers to KPMG for their review in the audit process for the company's SEC filings; correct?

A.    Yes, sir.

Q.    Okay.  And isn't it the case that

HEARING JUNE 4, 2026

A.    Yes.  Well, I had to get a tax opinion, yes.

Q.    Thank you.  And that was actually a requirement for the insurance companies that gave you the taxes; correct?

A.    That gave us the insurance.

Q.    I'm sorry.

A.    Yeah.

Q.    That was the requirement of the insurance companies who are insuring against these taxes?

A.    Yes.

Q.    Okay.  Thank you.

So when did PwC finish its work for that opinion?

A.    Oh, I want to say it was in February of '26.

Q.    Okay.  And at that time you were informed, were you not, that they were going to give you what is known as a should tax opinion; right?

A.    Yes.

Q.    Okay.  And the sum and substance of that opinion is that the company should

HEARING JUNE 4, 2026

not ultimately been liable for that deferred tax liability; correct?

A.    That's correct.

Q.    And that's consistent with the company's position; right?

A.    That's correct.

Q.    Mr. Esser asked you about this, and I think there was a little lack of clarity in some of your answers on what this should opinion means.  I don't blame anybody, I just want to make sure it is clear and I understand it.

So what is the lowest level opinion, isn't that a reasonable basis opinion?

A.    It is.

Q.    Okay.  And that's when a tax professional like PwC indicates there's approximately a 33 and a third percent chance of the tax opinion being correct?

A.    I would agree with that in general.

Q.    Okay.  And then the next level opinion is a substantial authority opinion;

HEARING JUNE 4, 2026

correct?

A.   Yes, sir.

Q.   And that's something between 33 and a third percent and 50 percent; right?

A.   I would agree with that.

Q.   And then substantial -- I'm sorry.

And then the next level of opinion is a more likely than not opinion; correct?

A.   That's correct.

Q.   And what that signifies to you, then, as a tax professional, is that their confidence amounts to something at least 50.1 percent of confidence that their opinion is correct; right?

A.   I would agree with that.

Q.   And then the next level of opinion is a should opinion, and that's what PwC has delivered here; right?

A.   That's correct.

Q.   And that signifies to you as a tax professional that their confidence is somewhere between 70 and 80 percent that their opinion is correct; right?

A.   I mean, look, some professionals

HEARING JUNE 4, 2026

may say it's a little bit lower than that. We're talking ranges here. You know, it's above more likely than not, and it's certainly not above 80 percent in anyone's world, I don't think.

So some professionals may say it's 65. We're talking ranges here. But it's certainly not above 80.

Q. Okay. And then a will opinion is the highest level opinion, and that's where the tax professional is telling you there's at least 80 percent certainty that their tax position, their tax opinion is, in fact, correct?

A. Well, different companies have different -- different service providers have different levels on that, but it's the highest level opinion you can get.

Q. Okay. And in this case the insurers accepted the PwC should opinion and provided the company with the tax insurance of 925 million as a result; right?

A. That's correct.

Q. Okay. Now, you have not